BEATTY, Justice.
Appeal by Mrs. Bettie Murphy from an adverse judgment in her declaratory judgment action which determined the beneficiary of certain pension plan death benefits of her late husband, Nasren Murphy, Jr. That judgment declared that Mary Gibson, defendant-appellee, was the lawful beneficiary of those benefits. We affirm.
The plaintiff, Bettie Murphy, married Nasren Murphy, Jr., on January 25, 1979. At that time, her husband was employed at Wood-Fruitticher Grocery Company, where he was employed as a delivery man until his death on June 3, 1983.
*375 The evidence at the ensuing non-jury hearing also established, however, that pri- or to his death, Mr. Murphy had known the defendant, whose name was Mary Barnes, while they both lived in Plainfield, New Jersey, during the early seventies. Mary Barnes, who was married to another man, left her husband in New Jersey and came to Birmingham with Nasren Murphy, Jr., in 1972. Mary Barnes lived with Mr. Murphy in Birmingham as his wife until 1977, when she moved to North Carolina.[1] According to the evidence, Mrs. Barnes and Mr. Murphy remained in contact, even after both had married others. Mrs. Barnes, in fact, was made beneficiary by Mr. Murphy on the Wood-Fruitticher Grocery Company beneficiary designation form, dated May 26,1977, where she is identified by name as Mary Murphy and by her correct Social Security number.
As stated above, Bettie Murphy married Nasren Murphy, Jr., on January 25, 1979. According to her evidence, Mr. Murphy brought certain documents to her concerning his insurance and profit sharing, and told her that she was the beneficiary of “everything he had.” She testified that he told her that “on the changes that his beneficiary, all his will was made to me because I was his wife,” and that he had made the necessary changes. She added that Mr. Murphy frequently discussed his benefits, telling her children and some friends that “this is my wife and my proper share in everything I have got is willed to her.”
Clarence Hill, a witness for plaintiff, also stated that the decedent “said a million times everything he had was willed to his wife.” This sentiment was also acknowledged by Mrs. Murphy’s daughter (by a prior marriage) and by Charlie Hill, a church friend of Mrs. Murphy’s.
On the other hand, Frank Murphy, Nas-ren Murphy’s brother, testified that he saw Nasren “most every Saturday,” before and after Nasren’s marriage to Bettie, and that in reference to his profit sharing plan Nas-ren told him that “he had Mary’s name on it, he wasn’t going to take the name off of it.” According to Frank Murphy, Nasren had learned that Mary was still listed as the beneficiary of his profit sharing trust. On an occasion about one week prior to Nasren’s death, Frank told Nasren “you ain’t got your business fixed right.” Nas-ren replied that “he had Mary’s name on it, he was going to let it stay on there.”
John Wood, the president of the grocery company, identified himself as the person who met on an annual basis with employees concerning their interests in the company’s profit sharing plan. He said that he annually distributed to each employee a balance form showing the individual share in the profit sharing trust (not one of the forms Nasren had taken home to Bettie). Wood also handled changes of beneficiary, but had no recollection of Mr. Murphy’s seeing him about a change or bringing a marriage certificate and requesting a change.
Authenticated copies of documents admitted. into evidence established the designation of the defendant, Mary Gibson, as a properly designated beneficiary of the trust.
At the conclusion of the hearing, the trial court entered an order which included findings of fact. We quote from that order:
“Counsel for the Plaintiff argues that Mr. Murphy had a right to change the beneficiary of his Profit-Sharing Plan in the same manner as he could change the beneficiary of an insurance policy and that his actions are so similar to the facts in the case of Norton v. Norton, 280 Ala. 307, 193 So.2d 750 (1967), that the Court should find that the Plaintiff is the beneficiary of the Profit-Sharing Plan benefits.
“Counsel for Mrs. Gibson argues that since the funds payable pursuant to the Profit-Sharing Plan were held in a trust, the law pertaining to trusts is applicable and that no change of beneficiary may be *376 effected without strict compliance with the terms of the trust instrument. (Trabits v. First Nat’l Bank of Mobile, 295 Ala. 85, 828 So.2d 353 (1975).) Since, the designation of the beneficiary was not changed, counsel argues that Mrs. Gibson is the beneficiary.
“Since the Court has chosen to believe the testimony of Frank Murphy, brother of the deceased (there was no evidence to the contrary), the Court finds that even under the Plaintiffs theory, Mrs. Gibson is entitled to the proceeds of the Profit-Sharing Plan. The. designation of the beneficiary of the benefits payable under the Profit-Sharing Plan is clearly a revocable act. [Section 6.10 of the Master Plan.] Mr. Murphy had the right to change the beneficiary at any time prior to his death. Mr. Murphy could have formally designated Mrs. Murphy as his beneficiary, and then, without any notice to Mrs. Murphy, changed his mind and changed the designated beneficiary back to Mrs. Gibson or anyone else he so chose. Thus, even if he did sufficiently make a gift of the benefits to Mrs. Murphy, he could subsequently make a gift of the benefits to Mrs. Gibson. It is the opinion of the Court that Mr. Murphy met the requirements for a gift of the benefits to Mrs. Murphy, as such requirements are set out in Phillips v. Phillips, 240 Ala. 148, 198 So. 132 (1940), but that when he subsequently learned that Mrs. Gibson was still named as the beneficiary, he changed his mind and decided to leave the benefits to Mrs. Gibson. At the time he made the decision to leave the benefits to Mrs. Gibson, nothing further needed to be done.”
The facts as expressed by the trial court are established by the record. The profit sharing plan was created by a trust instrument and administered by a corporate trustee. Section 6.10 of the “Declaration of Trust” states in part:
“Every participant must designate a Beneficiary and may direct the Plan Administrator to distribute all or half of the Benefit Value of the Participating Interest in the form of an annuity purchased by the Trustee but such designation or direction shall be effective only if made in a Beneficiary Designation Form, executed and dated by the Participant before a subscribing witness and shall not have effect until received by the Plan Administrator. Participants may change or revoke the Beneficiary designation or the direction to purchase annuities or both at any time by executing and dating before a subscribing witness a new Beneficiary Designation Form but no such change or revocation shall take effect until it has been received by the Plan Administrator....”
The facts adduced at the hearing established the availability of the means by which beneficiary changes might have been made by the decedent under that provision during his lifetime, and there is no dispute that this provision was not complied with.
From a reading of its order, it is apparent that the trial court viewed the plan as one analogous to insurance policy benefits, and, accordingly, applied existing case law to these factual circumstances. This Court agrees with that application under these facts. Insofar as the participant-employee was concerned, the benefit payable to the beneficiary upon the participant’s death is “a single cash payment equal to the Benefit Value of the participating interest,” unless otherwise directed by the participant. That provision, together with the designation of beneficiary provision, is sufficiently analogous to life insurance policy provisions to make our decisions on the latter controlling here.
Under those decisions, an insured may change his beneficiary without abiding by the specified requirements of his policy, which require that the change be noted thereon, if the insurer waives the requirement, and an interpleader by it is such a waiver. Norton v. Norton, 280 Ala. 307, 193 So.2d 750 (1967); Phillips v. Phillips, 240 Ala. 148, 198 So. 132 (1940). In the instant case, the trustee (tantamount to the insurer) interpleaded and was subsequently discharged without objection. Moreover, *377 an insured may change a beneficiary by gift when the power to make a change of beneficiary resides in the insured under the policy’s terms. Hutchins v. Whatley, 248 Ala. 449, 28 So.2d 191 (1946).
In this case, the trial court did conclude that Nasren Murphy, Jr., had made an inter vivos- gift of the benefits, but stated, “when he subsequently learned that Mrs. Gibson was still named as the beneficiary, he changed his mind and decided to leave the benefits to Mrs. Gibson.” Under the decision of Phillips v. Phillips, supra, cited by the trial court, it is reasonably inferable from the facts here that Nasren considered that nothing on his part remained to be done to effect the change, notwithstanding the terms of the profit sharing instrument, and thus under the evidence the trial court’s conclusion is tenable.
Under another theory, on the other hand, the trial court’s judgment is equally correct. That theory also requires, inter alia, an intention by the donor to make a gift. Herbert v. Haggermaker, 53 Ala. App. 15, 296 So.2d 915 (1974). Under the facts of this case, the trial court could have found that there was never any effective gift to Mrs. Bettie Murphy due to an absence of the requisite intent to effect the change. Not only did the trial court accept the testimony of Frank Murphy, the brother of the decedent, but that court also had before it an inconsistency between plaintiff’s verified complaint and plaintiff’s own testimony. In her verified complaint, plaintiff stated that she and her husband “appeared at the personnel office of Wood-Fruitticher and requested that the beneficiary under the ... Profit Sharing Plan ... be changed from Mary Barnes to his present wife, Bettie M. Murphy,” and that “Wood-Fruitticher ... informed Plaintiff and her husband that this had been done.” In her testimony at the hearing, plaintiff conceded that this was not true. The trial judge could consider this inconsistency along with other evidence in arriving at his conclusion on the facts adduced ore tenus. 18A Ala.Digest, Trial, Key No. 140(1). Accordingly, the trial court also could have concluded that Nasren did not entertain the necessary donative intent on behalf of Bettie Murphy prior to his death and, thus, could have reached the same result:,
There appearing no error in the conclusions of the trial court, which heard the case without a jury, the judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, SHORES and EM-BRY, JJ., concur.
ALMON, J., concurs in the result.
ADAMS, J., concurs specially.

. She subsequently divorced her husband in New Jersey and married her current husband, who is not a party to this proceeding.